Natalie C. HOCKETT, Appellee,

v.

Richard D. LARSON and Mary J. Larson, Lauren F. Cory and Letitia J. Cory, Appellants.

and The Federal Land Bank of Omaha, a corporation.

No. 83–2601.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1984.

Decided Sept. 6, 1984.

Rehearing Denied Oct. 4, 1984.

Michael J. Wall, Charles D. Knight, Rothschild, Barry & Myers, Chicago, Ill., Thomas F. Bell, Thomas J. Vilsack, Bell & Vilsack, Mount Pleasant, Iowa, for appellee, Natalie C. Hockett.

J.A. Hellstrom, Robert D. Lambert, Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, Iowa, James O. Bell, Bell & Hansen, New London, Iowa, for appellants Corys and Larsons.

Before LAY, Chief Judge, FAIRCHILD,* Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Richard D. Larson, Mary J. Larson, Lauren F. Cory, and Letitia J. Cory appeal from a final order entered in the District Court for the Southern District of Iowa, pursuant to Fed.R.Civ.P. 54(b), granting partial summary judgment in favor of Natalie C. Hockett. For reversal appellants argue the district court erred in holding that the 1976 quit claim deed was wholly void and wholly ineffective to convey any interest and that appellee was the sole owner of the property. For the reasons discussed below, we reverse and remand to the district court for further proceedings.

The material facts are not disputed. In 1945 appellee and Errol C. Hockett were married. The Hocketts lived in the Chicago area during their marriage. Errol Hockett owned approximately 160 acres of farmland located in Henry County, Iowa. In 1963 Errol Hockett conveyed the property by warranty deed to himself and appellee as joint tenants with the right of survivorship. Then in 1976 the property was conveyed to Robert E. Anderson[1] by a quit claim deed purportedly signed by Errol Hockett and appellee. Although the signature of Errol Hockett was genuine, the signatures of appellee and the notary public were forgeries. The parties agree that appellee's purported signature was in her husband's handwriting. It is unknown whether he or someone else forged the notary's signature. Appellee neither knew about the 1976 transaction nor authorized her husband to act on her behalf. The 1976 deed was recorded in the Henry County recorder's office.

In 1977 Anderson conveyed the property by quit claim deed to Kenneth E. Rzepecki.

Then in 1978 Anderson, his wife Dorothy, Rzepecki, and his wife Stephanie conveyed by separate warranty deeds the north half of the property to Richard D. Larson and his wife Mary J. Larson and the south half of the property to Lauren F. Cory and his wife Letitia J. Cory. These warranty deeds were also recorded. In depositions the Rzepeckis denied signing the 1978 warranty deeds and denied having any interest in the property, although Kenneth Rzepecki had been employed by Anderson and admitted signing blank warranty deeds similar to the warranty deeds in the present case during his employment. The Larsons financed their purchase of the property by obtaining a $242,000 mortgage from the Federal Land Bank of Omaha; the Corys also financed their purchase with a $351,000 Federal Land Bank mortgage.

In 1979 Errol Hockett was killed during the course of a burglary and it was only after his death that appellee discovered the 1976 quit claim deed and the subsequent conveyances to appellants. In 1981 appellee filed this diversity action to quiet title in federal district court, seeking declaratory and injunctive relief. After discovery appellee filed a motion for partial summary judgment on the issue of her title to the property as the surviving joint tenant. The district court granted partial summary judgment in favor of appellee, holding that the Hocketts were joint tenants under the 1963 warranty deed; that the 1976 quit claim deed was void as a forgery and thus wholly ineffective to convey any interest, even to bona fide purchasers for value; and that appellee as the sole surviving joint tenant was the owner of the property. *Hockett v. Larson,* No. CIV–81–86–D–1, slip op. at 4 (S.D.Iowa Aug. 12, 1983) (order granting partial summary judgment motion) (judgment was entered Nov. 3, 1983).

---

* The Honorable Thomas E. Fairchild, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. During oral argument counsel for appellants stated that the purchase price was approximately $355,000, paid in part with commercial property and in part in cash. Part of the consideration included the payment by Anderson of approximately $40,000 to a mortgagee. Counsel further stated that at the time of oral argument Anderson was in jail and that several substantial judgments had been entered against him.

The district court also rejected appellants' equitable affirmative defenses. The district court held that even assuming the defenses of estoppel, waiver and ratification would be available in a case involving a forged deed, the evidence in support of these defenses was insufficient as a matter of law. *Id.* at 5–10.

The district court also rejected appellants' alternative argument that the 1976 quit claim deed was partially valid and effective to convey only Errol Hockett's interest and thus sever the joint tenancy. The district court reviewed cases from Iowa and other jurisdictions and concluded that, if faced with a similar case, the Iowa courts would hold that the 1976 deed was void as a forgery and wholly ineffective to convey any interest. *Id.* at 10–12. The district court reserved ruling upon the question of equitable relief with respect to a mortgage which had been paid by Robert Anderson and later denied appellants' request for certification to the Iowa Supreme Court. This appeal followed.

For reversal appellants argue that (1) the district court's decision unfairly imposes a severe financial hardship upon them, especially because Iowa law prohibits the in-state sale of title insurance; (2) appellee should be estopped from asserting title because she permitted her husband to handle all family financial matters; (3) in order to protect land titles, appellants should be awarded title as bona fide purchasers for value and appellee should sue her husband's estate for the proceeds of the 1976 transaction; and (4) the 1976 quit claim deed was partially valid and effective to convey Errol Hockett's interest only and thus sever the joint tenancy, leaving appellee and appellants as tenants in common, appellee with a one-half interest and appellants with a one-half interest.

■ As recognized by the parties during oral argument, the question on appeal is a legal one: is the 1976 quit claim deed void in whole or is it partially valid and effective to convey only Errol Hockett's interest. Appellants' equitable arguments about financial hardship, estoppel and the protection of bona fide purchasers are not relevant to this question of title. Although we customarily defer to the views of the district court on questions of local law in diversity cases, we are not bound by the district court's conclusions. *See, e.g., Luke v. American Family Mutual Insurance Co.,* 476 F.2d 1015, 1019–20 & n. 6 (8th Cir.1972), *cert. denied,* 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973). We have carefully reviewed the cases relied upon by the district court and those cited by the parties. None of these authorities is precisely on point; nor has our research disclosed any case precisely on point. Analysis of the question is difficult and speculative due to the absence of controlling state decisions. For the reasons discussed below, we believe that the district court's conclusion that the 1976 quit claim deed was void in whole is erroneous.

■ It is clear that a forged deed is void and will transfer no title, even to subsequent purchasers without notice, unless the grantor or the grantor's successors are estopped to claim the invalidity. *E.g., First National Bank v. Enriquez,* 96 N.M. 714, 634 P.2d 1266, 1268 (1981); *cf. Watts v. Archer,* 252 Iowa 592, 107 N.W.2d 549, 552–53 (1961) (stolen deed analogous to forged deed); *Jackson v. Lynn,* 94 Iowa 151, 62 N.W. 704, 705 (1895) (stolen deed); *see generally* III American Law of Property §§ 12.58, at 303 (forged deed), 15.17, at 839–40 (estoppel to challenge forged deed) (A. Casner ed. 1974). In these cases there was no possibility of partial validity. For example, in *First National Bank v. Enriquez,* the defendant forged the signatures of both grantors. 634 P.2d at 1268. In each of the Iowa cases there was only one grantor and no question of forgery; each deed was held void because of nondelivery, a defect that affected the entire instrument. *Watts v. Archer,* 107 N.W.2d at 551; *Jackson v. Lynn,* 62 N.W. at 705.

■ Here, the signature of one grantor was genuine, but the signature of the other grantor was a forgery. Under these circumstances we think that the Iowa courts would hold that such a deed was partially

valid and effective to convey only the interest of the grantor whose signature was genuine, but void and ineffective to convey the interest of the grantor whose signature was forged. *Clark v. Hoover*, 51 Tex.Civ. App. 181, 110 S.W. 792, 794 (1908); *see also* 26 C.J.S. *Deeds* § 68, at 791 (1956). In *Clark v. Hoover* the appellant claimed title to land under a deed signed by a father, his two daughters and his son; the son's signature was a forgery. The appellee argued that because of the forgery, the deed was not competent to show a conveyance to the appellant's grantor by the other parties to the instrument. This argument was rejected by the court, which held that the deed was properly admissible in evidence and was effective to pass the apparent legal title to the interests of the father and his two daughters, but not that of the son whose signature was a forgery. 110 S.W. at 794.

■ The next question is whether the fact that the grantors were joint tenants precludes holding that the 1976 quit claim deed was partially valid and effective to convey Errol Hockett's interest only and thus to sever the joint tenancy. We can see no reason why the joint tenancy should preclude such a holding. First, it is clear that one joint tenant may convey his or her interest in the joint tenancy to a third party at any time, or even to the other joint tenant, without the knowledge or consent of the other joint tenant, and that such a conveyance will sever the joint tenancy, leaving the third party and the other joint tenant as tenants in common. *See, e.g., In re Baker's Estate*, 247 Iowa 1380, 78 N.W.2d 863, 864–67 (1956); *cf. Hyland v. Standiford*, 253 Iowa 294, 111 N.W.2d 260, 264 (1961) (joint tenancy in personal property); *Coffman v. Adkins*, 338 N.W.2d. 540, 543 (Iowa Ct.App.1983) (joint tenancy in personal property); *see generally* 32 Iowa L.Rev. 539 (1947). *See Burke v. Stevens*, 264 Cal.App.2d 30, 70 Cal.Rptr. 87, 91 (1968) (conveyance in secret); *Klouda v. Pechousek*, 414 Ill, 75, 110 N.E.2d 258, 261–62 (1953) (conveyance in secret). In the present case, the partially valid 1976 quit claim deed was in effect a conveyance by Errol Hockett of his interest only to Anderson, without the knowledge or consent of appellee, the other joint tenant. As a result, the joint tenancy was severed, and appellee and Anderson became tenants in common, each with a one-half interest in the property.

Second, this result is consistent with the general rule that "a joint tenant can dispose of nothing more than his own interest, and where one attempts to convey in excess of his interest, the transfer is inoperative to affect the rights of his cotenants but does operate to transfer to the grantee all the rights of the grantor in the majority of jurisdictions." Fitzgibbons, *Joint Tenancy in Iowa*, 34 Iowa L.Rev. 41, 54–55 (1948) (footnotes omitted); *see also* 48A C.J.S. *Joint Tenancy* § 35 (1981). *See Shockley v. Halbig*, 31 Del.Ch. 400, 75 A.2d 512, 513 (1950) (deed signed by one joint tenant because the other joint tenant never received the deed and could not have signed, held effective to reconvey only interest of joint tenant who signed to original grantor); *Snyder v. Vinson*, 167 Ky. 332, 180 S.W. 774, 775–76 (Ct.App.1915) (purchase at bankruptcy sale of what was purported to be whole estate but what was only interest of joint tenant held to have transferred only that joint tenant's interest and not that of other joint tenants); *Virginia Coal & Iron Co. v. Hylton*, 115 Va. 418, 79 S.E. 337, 338 (1913) (although one joint tenant cannot convey by metes and bounds or mineral interest only, such conveyance held not void but effective to pass the interest conveyed, making the grantee a tenant in common with the grantor's cotenants). Although we have found no case from Iowa, or any other jurisdiction, involving one joint tenant's purported conveyance of the entire property by a deed in which that joint tenant's signature is genuine but that of the other joint tenant is a forgery, we conclude that the Iowa courts would apply the general rule and hold that the 1976 quit claim deed was not void but effective to convey only Errol Hockett's interest to Anderson and to sever the joint tenancy.

We have carefully reviewed the cases relied upon by the district court and we believe that these cases are not controlling in the present case. In *Lea v. Lea,* 59 A.D.2d 277, 399 N.Y.S.2d 219, 222 (1977), a married couple jointly owned 600 shares of stock and was in the process of getting a divorce. The wife attempted to transfer the 600 shares of stock to her brother. The court held that the attempted transfer of stock was void and did not transfer her half interest in the shares or destroy the joint tenancy. *Id., citing Matter of Suter,* 258 N.Y. 104, 106, 179 N.E. 310, 310 (1932). Although the timing of the wife's attempted transfer of the stock is not clear from the opinion, it appears that the transfer was an unsuccessful attempt to remove the stock from disposition in the divorce proceedings. In *Hayes v. Lewis,* 33 Ill.App.3d 186, 338 N.E.2d 102, 104–06 (1975), the parties were a mother and her daughter. They were joint owners of certain shares of stock. The mother, or persons acting on her behalf, attempted to transfer 800 shares to herself by forging the daughter's signature on the stock certificates presented to the transfer agent. It appears from a careful reading of the opinion that the only endorsement on the stock certificates was the daughter's forged signature. *Id.* 258 N.Y. at 105, 179 N.E. 310. The court held that the attempted transfer by means of a forgery was completely ineffective either to sever the joint tenancy or to obtain ownership of all the stock. *Id.* at 105–06, 179 N.E. 310. The attempted transfer did not involve the genuine signature of one joint tenant and the forged signature of the other joint tenant, and there was no question of partial validity. *Cf. In re Casella,* 256 Cal.App.2d 312, 64 Cal.Rptr. 259, 262, 265 (1967) (A's fraudulent inducement of B to convey B's interest in joint tenancy to A and thus destroy the joint tenancy held void).

We recognize that there is language in *Nelson v. Albrechtson,* 93 Wis.2d 552, 287 N.W.2d 811, 817 (1980), which is contrary to our holding. In that case the plaintiffs sued for breach of an oral agreement to sell a commercial building jointly owned by the defendants. Despite the lack of a written agreement, the court considered whether the plaintiffs were nonetheless entitled to equitable enforcement of the oral agreement under a statutory exception to the statute of frauds. Under the exception the assent of all the grantors was necessary and it was undisputed that one of the defendants had not agreed to convey her interest in the property and had not authorized the other defendant to act on her behalf. It was in this context the court held that the oral agreement was not enforceable under the statutory exception to the statute of frauds and that "[t]he attempt by one joint tenant to convey the interest of another joint tenant or the entire property is of no effect." *Id.* 287 N.W.2d at 817, *citing Kurowski v. Retail Hardware Mutual Fire Insurance Co.,* 203 Wis. 644, 648, 234 N.W. 900 (1931). As noted by the court, the plaintiffs sought to enforce the oral agreement to purchase the building; the plaintiffs did not want only the interest of the one joint tenant. 287 N.W.2d at 817. Moreover, given the necessity of seeking equitable enforcement, the plaintiffs could not prevail at all on the basis of the assent of only one joint tenant. Thus, we believe that the facts in *Nelson v. Albrechtson* are distinguishable from the present case. And, despite the language quoted above, the court in *Nelson v. Albrechtson* did not address the question presented here.

In sum we hold that the Iowa courts would hold that the 1976 quit claim deed was partially valid and effective to convey Errol Hockett's interest only and to sever the joint tenancy. Accordingly, we reverse the order of the district court granting partial summary judgment in favor of appellee and remand the case to the district court for further proceedings consistent with this opinion.