2004 UT 52

David C. WHITNEY, an individual; Whitney Enterprises, Inc., a Minnesota corporation; and Con–Blast, Inc., a Minnesota corporation, Plaintiffs, Appellees, and Cross–Appellants,

v.

Larry FAULKNER, an individual; and Roberta Beverly, an individual, Defendants, Appellants, and Cross–Appellees.

No. 20020412.

Supreme Court of Utah.

June 25, 2004.

Kira M. Slawson, Salt Lake City, for plaintiffs.

Brad C. Smith, Ogden, for defendants.

WILKINS, Associate Chief Justice:

¶ 1 Defendant Larry Faulkner ("Faulkner") and his wife, Renee Faulkner ("Renee"), a garnishee, appeal the trial court's determination that Faulkner's disclaimer of an interest in a trust was ineffective and that the interest was therefore subject to garnishment. The plaintiffs, David C. Whitney, Whitney Enterprises, Inc., and Con–Blast, Inc. (collectively, "Whitney"), who have an unsatisfied judgment against Faulkner, cross-appeal the trial court's denial of prejudgment interest on the garnishment amount. We affirm the trial court's ruling regarding the effectiveness of Faulkner's disclaimer and Renee's liability to Whitney, but reverse and remand to the trial court on the issue of Whitney's entitlement to prejudgment interest.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Faulkner was a beneficiary of a trust created by his mother, Jennie A. Faulkner ("Jennie"), who later died. Upon Jennie's death, Renee succeeded her as the trustee of the trust. Faulkner and Renee were residual beneficiaries of the trust. Faulkner is also a judgment debtor to Whitney.

¶ 3 Pursuant to the terms of Jennie's trust, the beneficiaries met shortly after her death to divide personal property held by the trust. Faulkner accepted various items from the trust, including television equipment and household items, a kiln, and an opal ring. Under a separate provision of the trust, Renee, acting as trustee, sold the home owned by the trust and prepared to distribute the proceeds among the various beneficiaries, who included Faulkner's sisters. At that time, the cash held by the trust totaled $86,455.63. On May 4, 2001, prior to distribution of the trust's cash, Faulkner recorded

a document entitled "Renunciation of Interest," which purports to be a disclaimer under Utah Code section 75–2–801. That same day, Renee asked the trust's attorney to distribute its cash to the appropriate beneficiaries. Renee received $58,487.29, half of which represented Faulkner's share of the trust's residuary, which he purported to disclaim.

¶ 4 Whitney learned of Faulkner's interest in the trust from Faulkner's sisters and served Renee with a writ of garnishment aimed at collecting the trust funds Whitney believed belonged to Faulkner. The writ was served in May 2001, shortly after distribution of the trust proceeds. Whitney also obtained an order in supplemental proceedings requiring Faulkner to retain his assets until a hearing could be held. In a motion styled as an answer to the interrogatories accompanying the writ of garnishment, Renee moved to quash the writ because she believed Faulkner had disclaimed his interest in the trust proceeds. Faulkner joined in that motion. Whitney filed a reply, arguing that Faulkner's disclaimer was ineffective.

¶ 5 Pursuant to the parties' stipulation, on July 5, 2001, the court ordered Renee to deposit the disputed amount into a bank account pending further order of the court. The trial court ultimately denied the motion to quash and entered judgment against Renee. The trial court's order on the motion also awarded Whitney the actual interest earned on the garnished amount while the parties awaited resolution of the motion. However, the trial court granted Whitney no further prejudgment interest.

¶ 6 The trial court's ruling was premised primarily upon the plain language of Faulkner's disclaimer and Faulkner's acceptance of benefits from the trust before his disclaimer. Faulkner's disclaimer reads: "I, Lawrence C. Faulkner, hereby renounce, relinquish, and otherwise forfeit all my right, title, interest, or claim as a beneficiary of the estate of Jennie A. Faulkner as though I had predeceased [sic] her." The trial court held that the disclaimer did not purport to be a partial

disclaimer that covered only the cash distributions from the trust, but was facially an attempt to disclaim any and all right to proceeds from the trust. Accordingly, because section 75–2–801 bars disclaimer after one has accepted a portion of the property sought to be disclaimed, the trial court found that Faulkner's disclaimer was ineffective and ordered Renee to pay Faulkner's share of the proceeds of Jennie's trust to Whitney.

¶ 7 Faulkner and Renee appeal the trial court's denial of Renee's motion to quash. They contest the trial court's holding that Faulkner's disclaimer was ineffective. On appeal, they argue that partial disclaimer is allowed under Utah law and that Faulkner's acceptance of personal property from the trust did not bar his disclaimer of cash distributions. They argue that the trial court erred by requiring that Faulkner strictly comply with section 75–2–801 in order to effectuate a partial disclaimer.[1] In addition to opposing Faulkner and Renee's position, Whitney cross-appeals the trial court's denial of its motion for prejudgment interest against Renee. According to Whitney, Renee's failure to pay pursuant to the writ of garnishment constitutes an overdue debt on which prejudgment interest should be awarded, even in the absence of a contract or statute allowing such an award.

## STANDARD OF REVIEW

¶ 8 With regard to the trial court's evaluation of Faulkner's attempted disclaimer, its determination is reviewed with some measure of discretion because it represents the application of principles of law to certain facts. *State v. Pena*, 869 P.2d 932, 937–38 (Utah 1994). Whether prejudgment interest is available to a prevailing party is generally a question of law reviewed for correctness. *Lyon v. Burton*, 2000 UT 19, ¶ 73, 5 P.3d 616. However, with respect to charging prejudgment interest against garnishees, the principles we recognize today give the trial court discretion. Accordingly, when we review such determinations we will defer to the trial

---

1. Although Faulkner and Renee challenge the trial court's order on other grounds as well, our resolution of the points addressed in this opinion

dispenses with our need to evaluate those arguments.

court in the absence of an abuse of its discretion.

## ANALYSIS

### I. EFFECTIVENESS OF FAULKNER'S DISCLAIMER

■ ¶ 9 Faulkner and Renee argue that we should reverse the trial court's determination that Faulkner's purported disclaimer was ineffective. This argument rests on the disclaimer statute's provision for partial disclaimer of an interest in property. Utah Code Ann. § 75–2–801(1) (Supp.2003). However, the trial court correctly concluded that Faulkner failed to properly disclaim his interest in the residuary of Jennie's trust.

¶ 10 The document executed by Faulkner as a disclaimer provides that he "renounce[s], relinquish[es], and otherwise forfeit[s] *all* ... right, title, interest, or claim as a beneficiary of the estate of Jennie A. Faulkner." (Emphasis added.) The document makes no mention of Faulkner's acceptance of any property from the trust. Although the disclaimer statute allows for the partial disclaimer of an interest in a trust, the plain language of the statute requires that a disclaimer "describe the property or interest disclaimed" and "declare the disclaimer and extent thereof." *Id.* § 75–2–801(3)(a), (b).

¶ 11 Faulkner's disclaimer is not facially defective; rather, it describes the interest to be disclaimed as Faulkner's interest in Jennie's trust and, through the use of the word "all," declares the extent of that purported disclaimer as total. Thus, if the document is taken alone, the disclaimer would be valid. However, elsewhere in the statute is a prohibition that voids Faulkner's attempted disclaimer.

¶ 12 "The right to disclaim property or an interest therein is barred by an acceptance of the property or interest or a benefit under it." *Id.* § 75–2–801(5)(c). Faulkner accepted various items of personal property from the trust. Having accepted property representing a portion of the interest he purported to completely disclaim, Faulkner is legally barred from disclaiming that interest. Had he not accepted any property from the trust, or had he used language of partial disclaimer as he now urges he intended, Faulkner's disclaimer would have been effective. Although Faulkner contends that "substantial compliance" with the partial disclaimer provisions should be sufficient to shield the residual portion of Jennie's trust from his creditors, the language and policy of the statute do not support this argument.

■ ¶ 13 Far from being a departure from the requirement that we liberally construe statutes "with a view to effect the objects of the statutes and to promote justice," *id.* § 68–3–2 (2000), our recognition of the ineffectiveness of Faulkner's disclaimer is based on the plain language of the statute and the language of his purported disclaimer. As noted above, the statute requires a description of the disclaimer, a declaration of the extent of the disclaimer, and the acceptance of no benefit from the interest sought to be disclaimed. Faulkner strictly complied with the first two of these requirements by describing the interest to be disclaimed and the extent of the disclaimer. But, by accepting property from the trust, he failed to comply with the third provision. Thus, Faulkner's compliance with the statute does not depend on whether he substantially complied with the partial disclaimer provisions, but whether his purported complete disclaimer will be given effect. Were we to hold that partial disclaimer may be accomplished by using language completely disclaiming an interest in a trust, we would virtually eviscerate the requirement that a disclaimant declare the extent of his or her disclaimer. Statutory provisions are not to be interpreted in a manner rendering them devoid of effect; rather, we seek to give all provisions of a statute some effect. *ExxonMobil Corp. v. Utah State Tax Comm'n,* 2003 UT 53, ¶ 14, 86 P.3d 706. Here, to give effect to the partial disclaimer provisions requires that the law expect more of disclaimants than Faulkner suggests. Indeed, insisting that disclaimants plainly identify what exactly is to be disclaimed fulfills not only the statutory language, but the policy behind the disclaimer statute.

■ ¶ 14 "[T]he usual effect of the disclaimer statute is to avoid the imposition of

transfer taxes and to thwart creditors." *In re Estate of Kirk*, 591 N.W.2d 630, 634 (Iowa 1999) (citing *In re Estate of Lamoureux*, 412 N.W.2d 628, 630 (Iowa 1987)). While this is a permitted use of the disclaimer statute, one who wishes to take advantage of the statute's provisions to avoid the claims of others must comply with its terms. As noted above, Faulkner's substantial compliance argument simply ignores both the language of the statute and of the document he executed. He did not comply with the statutory requirements for a partial disclaimer, and cannot now avail himself of its protections. The disclaimer was ineffective as a total disclaimer because he accepted property from the trust, and as a partial disclaimer because it did not accurately describe the interest to be disclaimed. Therefore, Whitney is entitled to collect Faulkner's portion of Jennie's trust in partial satisfaction of its judgment.

## II. PREJUDGMENT INTEREST AGAINST GARNISHEES

¶ 15 On cross-appeal, Whitney argues that the trial court improperly failed to award prejudgment interest against Renee. Whitney asserts that a garnishee who unlawfully withholds funds properly subject to garnishment is liable to the garnishor for prejudgment interest. Renee counters that requiring her to pay prejudgment interest allows Whitney to collect interest upon interest by accruing post-judgment interest on the Faulkner judgment while simultaneously accruing prejudgment interest on the garnishment amount. We hold that although garnishors are not always entitled to prejudgment interest on garnishment amounts, it may be awarded in certain circumstances at the discretion of the trial court and does not represent interest upon interest for the garnishor.

¶ 16 In support of his argument for prejudgment interest, Whitney asserts that Utah Code section 15–1–1 and the case of *Wasatch Mining Co. v. Crescent Mining Co.*, 7 Utah 8, 24 P. 586 (Utah 1890), entitle garnishors to prejudgment interest against garnishees who wrongfully withhold garnished funds. However, neither these authorities nor the policy underlying garnishment proceedings supports such a categorical rule.

¶ 17 Section 15–1–1 of the Utah Code provides that parties to a contract may agree to "any rate of interest" and that the absence of a contractually defined rate will result in imposition of the statutory rate of ten percent. Utah Code Ann. § 15–1–1 (2001). However, section 15–1–1 does not provide for the payment of interest outside of the contract setting, although *Wasatch Mining* does. Despite the age of the opinion, the principle announced in *Wasatch Mining* remains correct; interest on overdue debts is allowed, even in the absence of a contract or statute providing for it. 24 P. at 587; *see also Bd. of Educ. v. Salt Lake County*, 659 P.2d 1030, 1036 (Utah 1983) (citing *Wasatch Mining*, 24 P. at 587). Thus, even if the statute does not entitle Whitney to interest because the parties had no contract, Whitney asserts that *Wasatch Mining* requires an award of prejudgment interest. However, a garnishee's obligations under rule 64D of the Utah Rules of Civil Procedure are simply not the same as those incurred by the type of debtor contemplated by the rule of *Wasatch Mining*. Any recovery of prejudgment interest from Renee must, therefore, be premised upon some other authority. We have not yet had the opportunity to elucidate the principles governing the award of prejudgment interest to garnishors. We take this opportunity to do so.

¶ 18 Garnishment allows a judgment creditor to satisfy a judgment by reaching property owed to the judgment debtor by a third party. Utah R. Civ. P. 64D(a)(I), (iii); *see also* 38 C.J.S. *Garnishment* § 2 (1996). Through garnishment proceedings, the garnishee's debt to the judgment debtor becomes due to the judgment creditor. In this scenario, the garnishee is typically a neutral party to the garnishment proceedings, such as a bank, and merely holds the subject property until a court establishes whether the judgment creditor is entitled to it. However, sometimes a garnishee departs from a neutral position to assert its own claim to the property, which may be proper. *See, e.g.,* Utah R. Civ. P. 64D(d)(ii)(4) (requiring garnishee's answers to interrogatories to identi-

fy any setoff claimed by the garnishee). Rule 64D of the Utah Rules of Civil Procedure establishes a process for resolving competing claims to the property made by the judgment creditor, judgment debtor, and garnishee. *Id.* 64D(h) to (i). Ordinarily, when a garnishee departs from a neutral position to assert its own competing claim to the property, its availment of rule 64D's process will not subject it to a claim for prejudgment interest.[2] Some other departures from neutrality, however, are not proper.

¶ 19 Although rule 64D is designed to facilitate collection and should not be used to place undue burdens or risks on garnishees, a trial court has the discretion to award prejudgment interest when a garnishee becomes unduly partisan, or otherwise obstructs the process. A garnishee's improper conduct, including its collusive support of either the judgment creditor or judgment debtor's position, may lead a trial court to assess prejudgment interest against it. Additionally, "[i]f the garnishee ... interposes obstacles to plaintiff's recovery against him by filing dilatory [pleadings], or by making difficulties and himself producing unreasonable delay, he will be charged with interest." 38 C.J.S. *Garnishment* § 197 (1996) (citations omitted). Contrary to Faulkner's view, such an award of prejudgment interest does not represent a double recovery of interest. Instead of the judgment creditor obtaining interest on both the underlying judgment and the garnishment amount during the pendency of the garnishment proceedings, the award of prejudgment interest offsets the interest due on the underlying judgment. Thus, the interest awarded in the garnishment proceedings is retroactively applied to the underlying judgment to reduce the amount owed. In short, the award of prejudgment interest in garnishment matters may be proper and does not constitute double recovery.

¶ 20 In this case, the trial court denied Whitney's motion for the assessment of prejudgment interest against Renee, but the record is insufficient to evaluate its decision in light of the principles here outlined. The trial court's decision was made in telephone conference and there is no indication of what standard the trial court utilized when it denied the motion. Because there are circumstances where an assessment of prejudgment interest against a garnishee is appropriate and there is no evidence in the record suggesting that the trial court considered those circumstances, we reverse the denial of Whitney's motion and remand the case to the trial court for reconsideration. On reconsideration, the court should be mindful that, pursuant to its July 5, 2001 order, the contested funds were maintained in an interest-bearing bank account pending resolution of this matter. The accrued interest on that account was awarded to Whitney and therefore must be considered by the trial court in determining the propriety of allowing additional interest for that same period of time. We express no opinion about the outcome of the motion upon reconsideration, which is left to the sound discretion of the trial court.

## CONCLUSION

¶ 21 We affirm the trial court's decision that Faulkner's purported disclaimer was ineffective to disclaim his interest in the cash distributions from Jennie's trust. We therefore affirm its judgment against Renee for the amount of Faulkner's share of the proceeds of Jennie's trust. We reverse the trial court's denial of Whitney's motion for prejudgment interest and remand that issue to the trial court for further consideration in light of this opinion. Affirmed in part and reversed in part.

¶ 22 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.

---

2. Despite having no liability for prejudgment interest, a garnishee may still be liable to pay accrued interest where it is otherwise due. For example, a garnishee bank would be required to pay the regular, accrued interest on a deposit account in which property was held pending resolution of the garnishment proceedings.